Craig A. Sherman – California State Bar No. 171224
LAW OFFICE OF CRAIG A. SHERMAN
1901 First Avenue, Suite 219
San Diego, CA 92101
Telephone: (619) 702-7892
Facsimile: (619) 702-9291
Shermanlaw@aol.com

Christopher J. Krupp – Washington State Bar No. 31827
WESTERN LANDS PROJECT
1314 NE 43rd Street, Suite 202
Seattle, WA 98105
Telephone: (206) 325-3503
krupp@westernlands.org

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN LANDS PROJECT, DESERT PROTECTIVE COUNCIL, WESTERN WATERSHEDS PROJECT,<br><br>*Plaintiffs,*<br>v.<br><br>UNITED STATES BUREAU OF LAND MANAGEMENT, KEN SALAZAR, Secretary of the Interior,<br><br>*Defendants.* | Civil Action No.:<br>_____<br>**'13CV0339 JM   JMA**<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

## I. INTRODUCTION

1.  This is a civil action for declaratory relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-576. The claims arise from violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370(d), and the Council of Environmental Quality's ("CEQ") guidelines (regulations) implementing NEPA, 40 C.F.R. §§ 1500-1508. This action is brought under the right of review provision of the APA, 5 U.S.C. § 702.

2. Plaintiffs seek an order adjudging and declaring that the defendants violated NEPA when the Bureau of Land Management ("BLM") adopted the Approved Resource Management Plan Amendments/Record of Decision for Solar Energy Development in Six Southwestern States ("ROD") based on the Final Programmatic Environmental Impact Statement for Solar Energy Development in the Six Southwestern States ("Final PEIS") that failed to properly define the purpose and need for the proposed plan amendments and failed to review a reasonable range of alternatives to the proposal.

## II.   JURISDICTION AND VENUE

3. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1346 (federal defendant jurisdiction) because the defendants are an agency and an official of the United States, and pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the laws of the United States, including the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370d; the Administrative Procedure Act, 5 U.S.C. §§ 701-706; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and the Equal Access to Justice Act, 28 U.S.C. § 2412.  The relief is authorized pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706.

4. Pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703, venue is properly vested in this court because a substantial portion of the federal land to which this action relates is located within the judicial district of the United States District Court for the Southern District of California.

## III.   PARTIES

5. Plaintiff Western Lands Project ("WLP") is a 501(c)(3) nonprofit conservation organization incorporated in the State of Washington with its office in Seattle, Washington.  WLP was founded in 1996 as the Western Lands Project and has more than 1,000 members. WLP works for the preservation and protection of

the nation's public lands. Its mission is to keep public lands public. To achieve this, it monitors, reviews and submits public comments on the proposals and actions of the federal land management agencies, with the goal of ensuring that those agencies act in the public interest. WLP's members have visited, and intend to continue visiting, public lands analyzed in the Final PEIS and subject to the ROD amending the resource management plans. WLP's members have visited those public lands, and intend to visit those lands again, to seek solitude, watch birds, study flora and fauna, hike, camp, ride horses, take photographs, and sightsee. The educational, environmental, recreational, aesthetic and cultural interests of WLP and its members will be adversely affected and injured by Defendants' failure to comply with applicable laws in the respects alleged herein, unless the requested relief is granted. To the extent required, WLP exhausted all available administrative remedies. No administrative appeals are available. WLP has no plain, speedy, or adequate remedy at law, as Defendants' unlawful actions are not otherwise reviewable in a manner that will ensure compliance with the laws whose violation is alleged herein. Accordingly, WLP seeks declaratory relief from this Court to rectify Defendants' unlawful acts.

6.     Plaintiff Desert Protective Council ("DPC") is a 501(c)(3) nonprofit conservation organization registered in the State of California with its office in San Diego, California.  DPC was founded in Palm Desert, California, in 1954 to protect the unique scenic, scientific, historical, cultural, spiritual and recreational features of the American southwest deserts and to educate children and adults to have a better understanding of the desert. DPC has members nationwide. DPC seeks to protect the landscape, the Native American cultural resources, and the plants and animals of the Southwest deserts from exploitation, development, and poaching.  DPC's members have visited, and intend to continue visiting, public lands analyzed in the Final PEIS and subject to the amended resource management plans. DPC's members have visited those public lands, and intend to visit those

lands again, to study flora and fauna, hike, take photographs, and sightsee. The educational, environmental, recreational, aesthetic and cultural interests of DPC and its members will be adversely affected and injured by Defendants' failure to comply with applicable laws in the respects alleged herein, unless the requested relief is granted. To the extent required, DPC exhausted all available administrative remedies. No administrative appeals are available. DPC has no plain, speedy, or adequate remedy at law, as Defendants' unlawful actions are not otherwise reviewable in a manner that will ensure compliance with the laws whose violation is alleged herein. Accordingly, DPC seeks declaratory relief from this Court to rectify Defendants' unlawful acts.

7. Plaintiff Western Watersheds Project ("WWP") is a 501(c)(3) nonprofit conservation organization founded in 1993 with approximately 1,400 members and with offices in Idaho, Montana, Utah, Wyoming, California and Arizona. WWP's mission is to protect and restore western watersheds and wildlife through education, scientific study, public policy initiatives and litigation. WWP's members have visited, and intend to continue visiting, public lands analyzed in the Final PEIS and subject to the amended resource management plans. WWP's members have visited those lands, and intend to visit those lands again, to view wildlife, study flora and fauna, camp, hike, take photographs, botanize, and sightsee. The educational, environmental, recreational, aesthetic and cultural interests of WWP and its members will be adversely affected and injured by Defendants' failure to comply with applicable laws in the respects alleged herein, unless the requested relief is granted. To the extent required, WWP exhausted all available administrative remedies. No administrative appeals are available. WWP has no plain, speedy, or adequate remedy at law, as Defendants' unlawful actions are not otherwise reviewable in a manner that will ensure compliance with the laws whose violation is alleged herein. Accordingly, WWP seeks declaratory relief from this Court to rectify Defendants' unlawful acts.

8. Defendant United States Bureau of Land Management is a federal agency within the United States Department of Interior and manages federal public lands across the United States, including the public lands to which this action relates. It maintains the El Centro Field Office, which has direct management responsibility for federal public lands in San Diego and Imperial Counties. BLM issued the Final PEIS and subsequent ROD from which this complaint arises.

9. Defendant Ken Salazar is the Secretary of the United States Department of the Interior, charged with overseeing the management of BLM's public lands and ensuring compliance with NEPA. The Secretary is charged with implementing statutes, regulations, and resource management plans on the lands within his control. Secretary Salazar signed the ROD from which this complaint arises. Secretary Salazar is sued in his official capacity as Secretary of the Department of the Interior.

## IV. LEGAL BACKGROUND

### The National Environmental Policy Act

10. NEPA's purpose is to "promote efforts which will prevent or eliminate damage to the environment." 42 U.S.C. § 4321. NEPA's central objectives are to guarantee that: (1) agencies takes a "hard look" at the environmental consequences of their actions before these actions occur by ensuring that the agencies carefully consider detailed information concerning significant environmental impacts; and (2) agencies make the relevant information available to the public so that it may have a role in both the decision-making process and the implementation of that decision. See, e.g., 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1500.1.

11. NEPA and the regulations implementing it promulgated by CEQ require that all federal agencies, including the BLM, must prepare an environmental impact statement ("EIS") for all "major actions significantly

**COMPLAINT FOR DECLARATORY RELIEF**

1   affecting the quality of the human environment."42 U.S.C. § 4332(2)(C); *see also*
2   40 C.F.R. § 1501.4.

3       12.    An EIS must provide a detailed statement of: (1) the environmental
4   impact of the proposed action; (2) any adverse environmental effects that cannot be
5   avoided should the proposed action be implemented; (3) alternatives to the
6   proposed action; (4) the relationship between local short-term uses of the
7   environment and the maintenance and enhancement of long-term productivity: and
8   (5) any irreversible and irretrievable commitments of resources that would be
9   involved in the proposed action should it be implemented. 42 U.S.C. § 4332(2)(C).

10      13.    NEPA is intended to ensure that agencies make informed choices
11  when federal decisions are likely to have environmental consequences. To that end,
12  an EIS must "inform decision-makers and the public of the reasonable alternatives
13  which would avoid or minimize adverse impacts or enhance the quality of the
14  human environment." 40 C.F.R. § 1502.1. NEPA further requires federal agencies
15  to accurately describe the affected environment and the consequences of the action,
16  to analyze the direct, indirect, and cumulative impacts of the proposed action. 40
17  C.F.R. §§ 1502.15, 1502.16, 1508.7, 1508.8.

18      14.    When preparing an EIS, an agency must ensure that high quality
19  information is available to the agency and the public before any decision is made
20  or action is taken. Accurate scientific analysis, expert agency comments, and
21  public scrutiny are essential to implementing NEPA. 40 C.F.R. § 1500.1(b).

22      15.    NEPA requires federal agencies to "study, develop, and describe
23  appropriate alternatives to recommended courses of action in any proposal which
24  involves unresolved conflicts concerning alternative uses of available resources."
25  42 U.S.C. § 4332(2)(E). The analysis of alternatives is the "heart" of the
26  environmental review process; the EIS must "rigorously explore and objectively
27  evaluate all reasonable alternatives," in order to "provid[e] a clear basis for choice
28  among options by the decisionmaker and the public." 40 C.F.R. § 1502.14(a). The

EIS must "[d]evote substantial treatment to each alternative considered in detail including the proposed action so that reviewers may evaluate their comparative merits." *Id*. § 1502.14(b). The EIS must also include "reasonable alternatives not within the jurisdiction of the lead agency." *Id*. § 1502.14(c). A "reasonable range" of alternatives must be considered, and this must include full consideration of all the resources involved. The exclusion of reasonable alternatives from review under an EIS renders the impact statement invalid.

## V. FACTUAL BACKGROUND

16. On May 29, 2008, BLM published a Notice of Intent in the Federal Register announcing that, in conjunction with the Department of Energy ("DOE"), it had initiated a programmatic environmental impact statement to assess the environmental, social, and economic impacts associated with solar energy development on BLM-managed public land in the six western states of Arizona, California, Colorado, Nevada, New Mexico, and Utah. BLM cited Executive Order 13212 and a sense of Congress provision in the Energy Policy Act of 2005, 42 U.S.C. §13201 *et seq.*, to support its determination that "specific actions should be taken" to further the development of "utility-scale solar energy projects that generate electricity that is distributed to consumers through the electric power transmission grid." 73 Fed. Reg. 30,908 (May 29, 2008). The Notice of Intent started a public comment period on the scope of the PEIS that was open until July 15, 2008.

17. Executive Order 13212 declares that "[t]he increased production and transmission of energy in a safe and environmentally sound manner is essential to the well-being of the American people." Exec. Order No. 13,212, 66 Fed. Reg. 28,357 (May 22, 2001). The Order directs agencies to "expedite their review of permits or take other actions as necessary to accelerate the completion of . . .

**COMPLAINT FOR DECLARATORY RELIEF**

[energy-related] projects, while maintaining safety, public health, and environmental protections." *Id.*

18. The Energy Policy Act of 2005 declared that "[i]t is the sense of the Congress that the Secretary of the Interior should, before the end of the 10-year period beginning on the date of the enactment of this Act, seek to have approved non-hydropower renewable energy projects located on the public lands with a generation capacity of at least 10,000 megawatts of electricity." Energy Policy Act of 2005, Pub. L. 109-58, § 211, 119 Stat. 660 (2005).

19. On July 7 and July 15, 2008, WWP submitted scoping comments for the proposed PEIS. The scoping comments suggested that BLM analyze alternatives to the utility-scale solar energy development on public lands identified in the Notice of Intent, including alternative means of solar power generation and alternative siting for solar plants outside the jurisdiction of BLM.

20. On July 10, 2008, DPC testified at BLM's Draft PEIS Scoping Meeting in El Centro, California. DPC also submitted written scoping comments on July 14, 2008. DPC's testimony and written comments called on BLM to consider distributed generation of solar power as an alternative to utility-scale solar energy development on public lands and to require the development of degraded lands prior to permitting the development of relatively undisturbed public lands for solar energy purposes.

21. On June 29, 2009, BLM announced that the scope of the PEIS was expanded to include an in-depth analysis of 24 Solar Energy Study Areas encompassing some 670,000 acres of public lands in the six western states. BLM also published a Notice of Intent in the Federal Register that opened a 30-day public comment period on the expanded scope of the impact statement. BLM later extended the public comment period for the expanded scope of the PEIS 45 days to September 14, 2009.

22. On September 11, 2009, WWP submitted to BLM another letter providing scoping comments. This letter reiterated the organization's earlier request that the PEIS include an analysis of alternatives to utility-scale solar energy development on undeveloped public lands such as solar energy development on previously degraded lands and alternative methods of solar energy generation.

23. On September 14, 2009, DPC, in conjunction with other conservation organizations, submitted two separate letters in response to BLM's June 29, 2009 Notice of Intent. These letters asked that, among other things, the PEIS analyze alternatives to utility-scale solar energy development on undeveloped public lands, including solar energy development on already degraded lands near existing infrastructure, such as abandoned mines, developed oil and gas fields, fallow agricultural lands and other brownfields. The letters also requested that BLM analyze alternatives that included distributed generation of solar energy.

24. On December 17, 2010, BLM published the Draft Programmatic Environmental Impact Statement for Solar Energy Development in Six Southwestern States ("Draft PEIS"). BLM also opened a 90-day comment period for the public to comment on the contents of the Draft PEIS. BLM later extended the comment period two times — initially for 30 days and then later for two additional weeks.

25. The Draft PEIS analyzed only two action alternatives in addition to the mandated "no action" alternative. The "Solar Energy Zone Program Alternative" proposed establishing 24 Solar Energy Zones ("SEZs"), covering 677,000 acres across the six western states. The SEZs would be areas within which BLM would prioritize and facilitate utility-scale production of solar energy and associated transmission infrastructure development. Under this alternative, BLM would restrict utility-scale solar energy development applications to SEZs only, and identify the remaining 98,000,000 acres of public lands included in the PEIS study area as exclusion areas in which such development was prohibited.

26. The second action alternative, the "Solar Energy Development Program Alternative," which BLM identified as its preferred alternative, proposed establishing the 24 SEZs in the same manner as the Solar Energy Zone Program Alternative. However, rather than prohibit utility-scale solar energy development on the remainder of the approximately 98,000,000 acres of lands in the PEIS study area, BLM would only prohibit utility-scale solar development on public lands where development was currently prohibited by law, regulation, Presidential proclamation or Executive Order and on lands determined to be not suitable for development because they had one or more of the following: (1) too steep of slopes, (2) too little solar insolation levels (i.e., the amount of sunlight that strikes the earth's surface), or (3) known resources, resource uses, or special designations identified in previous land use planning that were incompatible with solar energy development. In sum, the Solar Energy Development Program Alternative allowed for utility-scale solar energy development on 21,000,000 acres of public lands in addition to the SEZs.

27. Under the no action alternative, solar energy development would continue on BLM-managed public lands in accordance with existing BLM solar development leasing policies.

28. On March 31, 2011, WLP and DPC, along with other conservation organizations and individuals, submitted a letter to BLM commenting on numerous defects in the Draft PEIS, including the lack of alternatives brought forth for analysis. WLP's letter noted that BLM had improperly interpreted Executive Order 13212 and the Energy Policy Act of 2005's sense of Congress provision to craft a too-narrow purpose and need for the PEIS. WLP requested that BLM consider the alternatives of distributed generation of solar power and utility-scale solar energy development on disturbed and degraded public and private lands near existing transmission corridors.

29. On May 2, 2011, WWP submitted a comment letter to the BLM addressing inadequacies in the Draft PEIS. WWP again asked BLM to consider alternatives to the proposed action, including alternative methods of solar energy generation and the siting of solar energy plants on degraded lands rather than undisturbed public lands.

30. On October 27, 2011, BLM published the Supplement to the Draft Programmatic Environmental Impact Statement for Solar Energy Development in Six Southwestern States ("Supplemental Draft PEIS") and began a 90-day period for the public to comment on the document.

31. On December 7, 2011, DPC testified at BLM's Supplemental Draft PEIS Meeting in El Centro, California, noting the need for the PEIS to analyze alternatives to the proposed action including distributed generation of solar energy and the siting of utility-scale solar development on abandoned and contaminated lands.

32. On January 26, 2012, WWP submitted a comment letter to BLM addressing inadequacies in the Supplemental Draft PEIS, including the lack of alternatives analyzed.

33. On January 27, 2012, WLP, in conjunction with other conservation organizations, submitted a comment letter to BLM to address defects with the Supplemental Draft PEIS. Among the defects identified was the lack of alternatives to the proposed action to amend resource management plans to foster and expedite utility-scale solar energy development on public lands.

34. On July 27, 2012, BLM published the Final Programmatic Environmental Impact Statement for Solar Energy Development in Six Southwestern States. The date also served as the start of the 30-day Protest Period in which the public could challenge the findings of the Final PEIS. The Final PEIS again analyzed only two action alternatives in addition to the no action alternative.

**COMPLAINT FOR DECLARATORY RELIEF**

35.     The Final PEIS's SEZ Alternative, moderately revised from the Draft PEIS, proposed 17 Solar Energy Zones ("SEZs") across the six western states. The SEZs, covering approximately 285,000 acres of public land, are areas within which BLM would prioritize and facilitate utility-scale production of solar energy and associated transmission infrastructure development. Under this alternative, BLM would have continued to restrict utility-scale solar energy development applications to SEZs only, and identified all other studied public lands, more than 79,000,000 acres, as exclusion areas in which such development was prohibited.

36.     The second action alternative, which BLM now called the "program alternative" and continued to identify as its preferred alternative, called for establishing the 17 SEZs in the same manner as the SEZ Alternative. However, rather than prohibit utility-scale solar energy development on the remainder of studied lands, the program alternative allowed for utility-scale development outside the SEZs on an additional 19,000,000 acres of public lands in accordance with a proposed variance process.

37.     On August 24, 2012, WLP, together with several other conservation organizations, filed a formal protest of the Final PEIS because of, among other things, BLM's failure to analyze reasonable alternatives to the proposed action and the agency's reliance on a too-narrow purported purpose and need for the proposal.

38.     On August 27, 2012, WWP filed a formal protest of the Final PEIS, citing, among other things, BLM's failure to analyze reasonable alternatives.

39.     On October 9, 2012, the Department of the Interior announced that after approving a wind energy project in Wyoming, it had authorized energy projects capable of generating 10,000 megawatts of non-hydropower renewable power on public lands, the target established in the sense of Congress provision in the Energy Policy Act of 2005.

40.     On October 12, 2012, BLM published the Approved Resource Management Plan Amendments/Record of Decision for Solar Energy

COMPLAINT FOR DECLARATORY RELIEF

Development in Six Southwestern States, adopting the program alternative, in a slightly modified form from the Supplemental DPEIS, as its final decision. The ROD was signed by Mike Pool, Acting Director of BLM and by Secretary of the Department of Interior Ken Salazar, who stated that it was the final decision of the Department of the Interior and that any challenge to the decision must be brought in Federal district court.

## VI.   CLAIM FOR RELIEF

41. Plaintiffs incorporate by reference each and every allegation set forth in this Complaint as if set out in full below.

42. BLM has violated NEPA and its implementing regulations by issuing the ROD adopting the Approved Resource Management Plan Amendments for Solar Energy Development in Six Southwestern States, based upon the Final Programmatic EIS for Solar Energy Development in Six Southwestern States, that failed to meet NEPA's requirements. 42 U.S.C. § 4331 *et seq*.; 40 C.F.R. § 1500.1 *et seq*. BLM's environmental review of the plan amendments to expedite solar energy development on public lands across six western states in the Final PEIS is arbitrary, capricious, and otherwise not in accordance with law, in violation of 5 U.S.C. § 706.

43. Among other requirements, an EIS must specify the "underlying purpose and need to which the agency is responding." 40 C.F.R. § 1502.13. The EIS also must include a discussion of reasonable alternatives to the proposed major Federal action. 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1502.14.

44. The ROD and Final PEIS prepared by BLM for the plan amendments to foster solar energy development on public lands in the six southwestern states did not comply with these two requirements of NEPA. The purpose and need for the plan amendments were defined too narrowly in the PEIS, in violation of NEPA.

Relying upon the too-narrowly defined purpose and need, BLM failed to analyze reasonable alternatives to the proposed plan amendments, in violation of NEPA.

45. For the above reasons, and others, BLM's ROD adopting the Approved Resource Management Plan Amendments for Solar Energy Development in Six Southwestern States based upon the Final PEIS is arbitrary, capricious, and not in accordance with law as required by NEPA, its implementing regulations, and the APA, and is subject to judicial review under the APA. 5 U.S.C. §§ 701-706, 706(2).

46. Plaintiffs are entitled to their reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act.

## VII.   RELIEF REQUESTED

Wherefore, Plaintiffs respectfully request that this Court:

A. Adjudge and declare that Defendants Salazar and BLM violated NEPA and the APA in issuing its Approved Resource Plan Amendments/Record of Decision for Solar Energy Development in Six Southwestern States based on the Final PEIS for Solar Energy Development in Six Southwestern States;

B. Order Defendants Salazar and BLM to vacate and set aside the Approved Resource Plan Amendments/Record of Decision and corresponding Final PEIS for Solar Energy Development in Six Southwestern States;

C. Award Plaintiffs their reasonable costs, litigation expenses, and attorney's fees associated with this litigation pursuant to the Equal Access to Justice Act and all other applicable authorities; and

D. Grant such further relief as the Court deems proper and just.

Dated:  February 12, 2013

            LAW OFFICE OF CRAIG A. SHERMAN

             s/ Craig A. Sherman, Esq.                  .
            Craig A. Sherman
            Shermanlaw@aol.com
            Attorney for Plaintiffs